### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| **JOHN DOE** <br><br>           **Plaintiff,** <br><br> **vs.** <br><br> **MARYMOUNT UNIVERSITY,** <br> **LINDA McMURDOCK,** <br> **and** <br> **JANE ROE** <br><br>           **Defendants.** | **Case No. 1:17-cv-00401-TSE/MSN** |

---

### DEFENDANT JANE ROE'S MEMORANDUM
### IN SUPPORT OF HER MOTION TO DISMISS

---

Jason R. Waters (VSB No. 73887)
Catherine J. Malycke (VSB No. 84952)
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
8444 Westpark Drive, Suite 510
McLean, Virginia 22102-5102
(703) 245-9300
(703) 245-9301
Jason.Waters@wilsonelser.com
Catherine.Malycke@wilsonelser.com
*Counsel for Defendant Jane Roe*

## Table of Contents

**Introduction** ................................................................................................5

**Statement of Alleged Facts** ........................................................................6

**Legal Standard** ...........................................................................................10

**Argument** ....................................................................................................11

    **I.**    **Plaintiff's defamation claim is untimely.** ................................11

        *A.*  *Plaintiff's defamation claim is time-barred with respect to any statements Ms. Roe allegedly made before March 31, 2016.*..............11

        *B.*  *Repetition of Ms. Roe's statement that Plaintiff sexually assaulted her does not salvage Plaintiff's claim.* ............................13

        *C.*  *The statute of limitations period for Plaintiff's claim cannot be tolled.* ........................................................................................15

    **II.**   **Even if Plaintiff's defamation claim were timely, he failed to state an actionable claim against Ms. Roe because her statements are absolutely or qualifiedly immune.** ........................................15

        *A.*  *Ms. Roe's statements to her university as part of the Title IX investigation enjoy absolute immunity.*.............................................16

        *B.*  *Even if Ms. Roe's statements were not absolutely privileged, the alleged statements enjoy qualified immunity.* ...................................20

**Conclusion** ...................................................................................................22

1

## Table of Authorities

<u>**Cases**</u>

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ......................................................................10

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ......................................................................10

*Butters v. James Madison Univ.*
    208 F. Supp. 3d 745 (W.D. Va. 2016) ..................................................19

*Childress v. Clement*
    44 Va. Cir. 169 (Va. Cir. Ct. 1997)..............................................16, 17

*Echtenkamp v. Loudoun County Pub. Schs.*
    263 F. Supp. 2d 1043 (E.D. Va. 2003) ................................................21

*Francis v. Giacomelli*
    588 F.3d 186 (4th Cir. 2009) ..............................................................10

*Harris v. St. Joseph's University*
    No. 13-3937, 2014 U.S. Dist. LEXIS 65452 (E.D. Pa. 2014) ..............................20

*Jordan v. Shands*
    255 Va. 492, 500 S.E.2d 215 (1998).....................................................11

*Katz v. Odin, Feldman & Pittleman, P.C.*
    332 F. Supp. 2d 909 (E.D. Va. 2004) ........................11, 13, 14, 16, 17, 18, 19, 21

*Larimore v. Blaylock*
    259 Va. 568, 528 S.E.2d 119 (2000).....................................................21

*Lewis v. Gupta*
    54 F. Supp. 2d 611 (E.D. Va. 1999) ....................................................14

*McKay v. Clarke County Sch. Bd.*
    10 Va. Cir. 442 (Va. Cir. Ct. 1988).....................................................16

*Morrissey v. William Morrow Co.*
    739 F.2d 962 (4th Cir. 1984) ..............................................................13

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*
    591 F.3d 250 (4th Cir. 2009) ..............................................................10

*Penick v. Ratcliffe*
    149 Va. 618, 140 S.E. 664 (1927).........................................................................16

*Republican Party of N.C. v. Martin*
    980 F.2d 943 (4th Cir. 1992) ...............................................................................10

*Richmond, F. & P. R.R. Co. v. Forst*
    4 F.3d 244 (4th Cir. 1993) ...................................................................................10

*Semida v. Rice*
    863 F.2d 1156 (4th Cir. 1988) ..............................................................................14

*Southeastern Tidewater Opportunity Project, Inc. v. Bade*
    246 Va. 273, 435 S.E.2d 131 (1993)....................................................................21

*Weaver v. Beneficial Finance Co.*
    199 Va. 196, 98 S.E.2d 687 (1957) ......................................................................14

*Wells v. Xavier University*
    7 F. Supp. 3d 746 (S.D. Ohio 2014) .....................................................................19

*Young v. City of Mount Rainier*
    238 F.3d 567 (4th Cir. 2001) ...............................................................................21

## **Statutes**

20 U.S.C. § 1681(a), Title IX of the Education Amendments of 1972 (Title IX) ............19

## **Codes and Rules**

Va. Code Ann. § 8.01-229 .................................................................................15

Va. Code Ann. § 8.01-230 .................................................................................11

Va. Code Ann. § 8.01-247.1 ...............................................................................11

Federal Rule of Civil Procedure 8 ..................................................................6, 10

Federal Rule of Civil Procedure 12(b)(6) ........................................................6, 10

## **Other Authorities**

Office of Civil Rights, U.S. Dep't of Educ., "Dear Colleague Letter,"
    Dated Apr. 4, 2011 ....................................................................................19, 22

Restatement (Second) of Torts § 557A(4)(1997)). .............................................................13

732584v.1

**Introduction**

Plaintiff John Doe's well-worn playbook of attacking the victim in this defamation claim fails to state a cause of action against Defendant Jane Roe. Plaintiff and Ms. Roe were both students at Marymount University. Pursuant to the university's guidelines and Title IX, Ms. Roe reported to the university that Plaintiff forced her to engage in unwanted sexual contact. After a lengthy investigation, the university agreed with Ms. Roe that Plaintiff violated the university's sexual conduct policy. The university affirmed this finding on appeal. As a result, Marymount suspended Plaintiff, who filed this defamation claim against Ms. Roe, along with a variety of claims against Marymount University and its Title IX coordinator.

Plaintiff's Complaint fails to state a viable cause of action against Ms. Roe. Plaintiff's defamation claim violates Virginia's statute of limitations because Ms. Roe made the allegedly defamatory statements more than one year before Plaintiff filed this case. Plaintiff's Complaint could only assert "upon information and belief" that Ms. Roe repeated the same allegedly defamatory statements during Marymount's Title IX investigation within one year of the Complaint. Repetition of those statements, however, does not toll the statute of limitations. Nor may the Plaintiff claim that his fear of retaliation justified sitting on his rights.

Even if Plaintiff timely filed his Complaint with respect to the statements he attributes to Ms. Roe within the preceding year, those statements enjoy absolute immunity. Specifically, Ms. Roe made the statements, as alleged in the Complaint, in the context of a quasi-judicial proceeding that the university conducted pursuant to a federal statute. At the very least, Ms. Roe's alleged statements enjoy qualified immunity under the common-interest privilege. Yet, aside from simply alleging that Ms. Roe made the statements maliciously, Plaintiff offered no legally sufficient facts to support such an assertion.

Accordingly, Defendant Roe respectfully requests this Court to grant her motion to dismiss pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff should not be permitted to seek recovery for allegedly defamatory statements that Ms. Roe originally made more than a year before Plaintiff filed this case. More importantly, however, Plaintiff's defamation claim, if permitted to proceed, presents a legitimate threat to victim speech and sexual assault reporting on university campuses throughout the United States. To allow such a claim would chill speech in such a way that it risks undermining the critical objectives of Title IX. As such, this Court should dismiss Plaintiff's Complaint with prejudice.

## Statement of Alleged Facts[1]

Jane Roe was an undergraduate student at Marymount University, a private university in Virginia. Compl. ¶¶ 22, 24. She graduated from the University in 2017. Compl. ¶ 24. Plaintiff John Doe also attended Marymount as an undergraduate student until he was suspended in August 2016 for sexually assaulting Ms. Roe in November 2014. Compl. ¶ 21.

In early November 2014, Ms. Roe was introduced to Plaintiff through a mutual friend, who told Plaintiff that Ms. Roe was interested in him. Compl. ¶¶ 3, 59. On November 8, 2014, Ms. Roe contacted him by text message, and they arranged to meet in Plaintiff's dorm room. Compl. ¶¶ 4, 60, 61. That evening, Ms. Roe claims that Plaintiff sexually assaulted her. *See* Compl. ¶¶ 5, 63-69.

After their encounter on November 8, 2014, Plaintiff and Ms. Roe engaged in a revealing text message exchange in which Plaintiff appeared to validate Ms. Roe's complaints by

---

[1] For the purposes of this motion only, the allegations of Plaintiff's Complaint are assumed to be true. Nothing in this Motion should be construed as an admission as to the actual truth of Plaintiff's allegations. Moreover, Defendant Jane Roe does not accept as true, nor should this Court, Plaintiff's interpretation of the alleged facts or the legal conclusions they draw from them in the Complaint.

apologizing for his own conduct. In the days after the incident, Plaintiff texted Ms. Roe, but she did not respond. Compl. ¶ 7. On November 15, 2014, Plaintiff texted: "So I don't meant to be a weirdo but I wanna ask what's up it's bothering me." Compl. ¶ 72. In response, on November 21, 2014, Ms. Roe texted: "Hey, so I don't know what you remember about when I was in your room the other night, but you really scared me when you wouldn't take no for an answer." "I think you're a really nice guy…," she continued, "but you got really pushy and I just wanted to let you know…." Compl. ¶ 72. In response, Plaintiff stated, "Ok I'm sorry I frightened you…." Compl. ¶ 73.

Ultimately, Ms. Roe reported the sexual assault to the university.  On September 8, 2015, Linda McMurdock, Marymount's Title IX Coordinator, informed Plaintiff of the complaint, and the university issued a no-contact order. Compl. ¶¶ 8, 21, 80, 249. The university's investigation team, Dr. Bernadette Costello and Mr. Paul Easton, conducted their first interview of Ms. Roe on October 1, 2015. Compl. ¶¶ 89, 97. The investigation team interviewed Ms. Roe's roommate "L.J." and another student, "W.R.," on October 22 and 23, 2015. Compl. ¶¶ 103, 106. On November 18, 2015, the university's investigation team conducted Ms. Roe's second interview. Compl. ¶ 108.

The investigation team prepared the draft of its written investigative report and, on November 24, 2015, the investigators invited Plaintiff to review and comment on it. Compl. ¶ 109. After receiving comments from Plaintiff, on February 2, 2016, the investigation team prepared a revised draft of its written report. Compl. ¶ 121. On March 18, 2016, the investigation team prepared a second revised draft and invited Plaintiff to review and comment. Compl. ¶ 124. On April 28, 2016, the investigation team prepared its final version of the report and invited

Plaintiff to review and comment. Compl. ¶ 133. The final investigative report was provided to Donald Lavanty, Adjudicator. Compl. ¶ 140.

Ms. McMurdock informed Plaintiff on May 12, 2016 that the investigation team determined that there was "sufficient information" to suggest that Plaintiff committed violations of the university's sexual assault policy. Compl. ¶ 137. On June 2, 2016, the university's Adjudicator determined by a preponderance of the evidence that Plaintiff was "responsible for having or attempting to have sexual intercourse with [Ms. Roe] without effective consent." Compl. ¶ 152. Pursuant to the Adjudicator's request, Ms. Roe submitted her written impact statement on June 30, 2016. Compl. ¶¶ 153, 155, 157. On July 11, 2016, the University suspended Plaintiff for two years. Compl. ¶¶ 15, 21, 160. Plaintiff appealed the Adjudicator's decision, and Ms. Roe submitted a response on July 21, 2016. Compl. ¶¶ 161, 165. On August 8, 2016, the Appellate Authority denied Plaintiff's appeal and upheld the two-year suspension. Compl. ¶ 167.

Plaintiff filed his lawsuit against Ms. Roe on March 31, 2017. He asserted one cause of action for defamation per se against her. As a preliminary matter, Plaintiff identifies numerous non-defamatory statements, such as comments expressing physical attraction that Ms. Roe allegedly made prior to the assault. *See* Compl. ¶¶ 6, 75-76, 243-44. Plaintiff claims that Ms. Roe defamed him by stating that Plaintiff sexually assaulted her on November 8, 2014 in Plaintiff's dorm room. On the same day as the incident, Ms. Roe told "L.J." that Plaintiff had been "aggressive" with her and that Ms. Roe "didn't ask for it." Compl. ¶ 246. Also on that day, Ms. Roe allegedly told "Z.M." that Plaintiff had physically and sexually assaulted her. Compl. ¶¶ 79, 247. Before the university initiated its investigation in September 2015, Ms. Roe allegedly related the incident to "C.S.," a resident assistant, who prepared a report. Compl. ¶ 129.

During Ms. Roe's first interview with the investigation team in October 2015, Plaintiff claims that Ms. Roe told university officials that Plaintiff held her down and tried to remove her clothes. Compl. ¶ 98. She allegedly related that Plaintiff performed oral sex on her without her consent and that she kneed him in the face. Compl. ¶ 99. Plaintiff claims that Ms. Roe also told investigators that "she got up off the bed, whereupon Mr. Doe pushed her into the door and put his fist up her vagina while she was standing there." Compl. ¶ 99. She stated that Plaintiff locked the door from the inside and prevented her from leaving. Compl. ¶ 100. Ms. Roe stated that he threw her onto his bed and took off his pants. Compl. ¶ 101. At which point, she left the room while Plaintiff shouted, "If you don't want me, that's ok." Compl. ¶ 101. The investigation team conducted a second interview with Ms. Roe on November 18, 2015. Compl. ¶ 108.

Following her interviews with the investigation team, on June 30, 2016, Ms. Roe submitted a victim impact statement at the request of Marymount's Adjudicator. Compl. ¶¶ 153, 155, 157. Plaintiff alleges "upon information and belief" that Ms. Roe accused him of sexually assaulting her in that statement. Compl. ¶¶ 158-159, 258-259. Similarly, Ms. Roe allegedly submitted a response to Plaintiff's appeal on July 21, 2016. Compl. ¶¶ 165, 261. Again, "upon information and belief," Plaintiff claims that Ms. Roe's response accused him of sexual assault. Compl. ¶¶ 166, 262. Apparently, Plaintiff had not seen either submission that Ms. Roe made at the university's request on June 30, 2016 or on July 21, 2016, and he could only presume that those submissions included the same statements she previously made about Plaintiff sexually assaulting her. Plaintiff's presumption, however, fails to present a legally cognizable cause of action for defamation.

## Legal Standard for Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) requires the court to dismiss a Complaint when it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In evaluating a motion to dismiss, the court must take the facts alleged in the complaint as true and determine whether the complaint "fails to articulate any claim for relief 'that is plausible on its face.'" *Francis v. Giacomelli*, 588 F.3d 186, 190 (4th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). The facts must be construed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992).

Federal Rule of Civil Procedure 8 provides the standards for whether a pleading is legally sufficient, such that the court may dismiss it under Rule 12(b)(6). *See* Fed. R. Civ. P. 8. ("A pleading that states a claim for relief must contain: . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief".) The general rules of pleading require that the complaint provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In deciding whether the complaint states a claim for relief, the court may consider an affirmative defense raised on a motion under Rule 12(b)(6). *Richmond, F. & P. R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).

732584v.1

**Argument**

**I.      Plaintiff's defamation claim is untimely.**

Virginia's one-year statute of limitations for defamation claims and the single-publication rule bar Plaintiff's cause of action against Ms. Roe. Plaintiff's Complaint alleges that Ms. Roe defamed him when she stated that he sexually assaulted her on November 8, 2014. He did not file this lawsuit until March 31, 2017, nearly two and a half years **after** Ms. Roe allegedly made this statement. The fact that Ms. Roe's statements were repeated in the university's April 2016 final investigative report, Ms. Roe's victim impact statement of June 2016, or Ms. Roe's appellate response of July 2016 do not change the outcome. And Plaintiff's claim that he feared retaliation from the university did not toll the statute of limitations for his claim against Ms. Roe.

> **A.      *Plaintiff's defamation claim is time-barred with respect to any statements Ms. Roe allegedly made before March 31, 2016.***

In Virginia, the statute of limitations for defamation actions is one year. Va. Code Ann. § 8.01-247.1. As stated in Virginia Code Ann. § 8.01-230, "a tortious cause of action arises on the date the injury is sustained, or, in the case of a defamation cause of action, on the date of publication." *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 914 (E.D. Va. 2004). The cause of action for a defamation action starts to accrue on the date the alleged defamatory acts occurred. *See Jordan v. Shands*, 255 Va. 492, 498, 500 S.E.2d 215, 218 (1998) (holding that the statute of limitations barred plaintiff's defamation claim because the cause of action accrued on the date the alleged defamatory acts occurred).

Nearly all the statements Plaintiff attributes to Ms. Roe occurred more than one year before Plaintiff filed his Complaint on March 31, 2017. Plaintiff claims that Ms. Roe made statements concerning Plaintiff's behavior on November 8, 2014, the same day as the incident in his dorm room, to Ms. Roe's fellow students, "L.J." and "Z.M." *See* Compl. ¶¶ 6, 75, 76, 79,

11

104, 243, 244, 245, 246, 247. Plaintiff claims that Ms. Roe also shared the accusation that Plaintiff sexually assaulted her to other students, "W.R." and "C.S." *See* Compl. ¶¶ 106, 129. Plaintiff's Complaint did not indicate the date on which these statements occurred, but it is clear from the Complaint that they were made prior to September 8, 2015. *Id.* Specifically, "C.S." was a resident assistant, who prepared an incident report following the meeting between "C.S." and Ms. Roe. Compl. ¶ 129. As such, Ms. McMurdock's September 8, 2015 letter advising Plaintiff of the university's investigation into the assault necessarily followed Ms. Roe's discussion with student "C.S." *Id.*

Plaintiff also claims that Ms. Roe defamed him in statements she directly gave to the university during its investigation. As previously discussed, Ms. Roe provided details of her encounter to the university's investigators during two interviews, which occurred on October 2, 2015 and November 18, 2015. *See* Compl. ¶¶ 98, 99, 100, 101, 108. Similarly, students "L.J." and "W.R." repeated the statements that Ms. Roe allegedly made after the incident in Plaintiff's dorm room to university investigators on October 22, 2015 and October 23, 2015. *See* Compl. ¶¶ 103, 106. The university included Ms. Roe's statements to investigators, as well as those statements that her fellow students attributed to her, in its reports on November 24, 2015, February 2, 2016, March 18, 2016, and April 28, 2016. *See* Compl. ¶¶ 109, 121, 124, 133.

Nearly all of these statements – Ms. Roe's initial comments to her roommate and fellow students, their republication of her statements, her statements to investigators, and the university's republication of these statements in the first three versions of its report – occurred more than one year before Plaintiff filed his Complaint on March 31, 2017. Accordingly, Virginia's one-year statute of limitations bars any recovery against Ms. Roe for these statements. The only statements Plaintiff attributes to Ms. Roe within one year of his Complaint – between

March 31, 2016 and March 31, 2017 – consist of Ms. Roe's statement that Plaintiff sexually assaulted her in her victim impact statement in June 2016, her response to Plaintiff's appeal in July 2016, and the university's final report in April 2016. *See* Compl. ¶¶ 157-159, 165. Due to Virginia's single-publication rule, however, Plaintiff may not recover for those statements.

> ### B.    *Repetition of Ms. Roe's statement that Plaintiff sexually assaulted her does not salvage Plaintiff's claim.*

This Court and the Fourth Circuit have concluded that Virginia follows the single-publication rule. This rule "permits only one cause of action to be maintained for any single publication, even if heard or read by two or more third persons." *Katz*, 332 F. Supp. 2d at 918 (citing to *Morrissey v. William Morrow Co.*, 739 F.2d 962 (4th Cir. 1984); Restatement (Second) of Torts § 557A(4)(1997)). Subsequent distribution of the allegedly defamatory statement "does not create independent actions or start the statute of limitations running anew." *Katz*, 332 F. Supp. 2d at 918 (citation omitted).

In *Katz v. Odin, Feldman & Pittleman, P.C.*, this Court held that the plaintiff could not "resurrect his stale claim" for allegedly defamatory statements in a letter on June 28, 2002 by asserting that defendants republished the letter's contents at an arbitration hearing on June 30, 2003. *Katz*, 332 F. Supp. 2d at 918. Republication on the date of the arbitration hearing, the Court stated, "does not restart the limitations period." *Id.* The Court reasoned the cause of action for plaintiff's claim arising out of the June 28, 2002 letter "began to run the day the letter was received by the arbitration panel and cannot be tolled or extended." *Id.* The date on which plaintiff learned of the defamatory statement was not relevant. *Id.* at 915 n.5.

Applying Virginia's single-publication rule to this case, Ms. Roe may not be liable for Plaintiff's claims relating to her victim impact statement in June 2016 or her response to Plaintiff's appeal in July 2016. Most notably, Plaintiff's Complaint depends on "information and

belief." *See* Compl. ¶¶ 157, 258-259. Apparently, Plaintiff had not seen the statements he attributed to Ms. Roe in June and July 2016, before he filed the Complaint. As such, he was unable to identify with any particularity the actual content of the allegedly defamatory statement.

Despite this deficiency in Plaintiff's pleading, even if Ms. Roe stated that Plaintiff sexually assaulted her in the victim impact statement or appellate response, Plaintiff's Complaint demonstrates that she simply repeated the content of her prior statements. *See* Compl. ¶¶ 157, 258-259. Each defamatory statement constitutes a separate and distinct cause of action. *See Weaver v. Beneficial Finance Co.*, 199 Va. 196, 204, 98 S.E.2d 687, 693 (1957). As this Court noted in *Katz*, however, "'repeated defamations do not constitute a continuing tort.'" *Katz*, 332 F. Supp. 2d at 917 (quoting *Lewis v. Gupta*, 54 F. Supp. 2d 611, 616 (E.D. Va. 1999)). Therefore, Plaintiff's allegation that Ms. Roe repeated in June 2016 and July 2016 her prior statements dating back to November 8, 2014 that Plaintiff sexually assaulted her does not "extend the statute of limitations…for the first set of statements…, or revive such action by identifying similar…statements made later." *Id.*

Nor does Plaintiff's claim survive the statute of limitations because the university repeated the allegedly defamatory statements in the final version of its report in April 2016. Most notably, Plaintiff's Complaint demonstrates that the statements attributed to Ms. Roe in the April 2016 report were the same statements she allegedly made to investigators in October 2015 and communicated to Plaintiff in the first three versions of the university's report. Compl. ¶¶ 89, 97, 109, 121, 124, 133. This is analogous to the Fourth Circuit's decision in *Semida v. Rice*, 863 F.2d 1156 (4th Cir. 1988), in which the court concluded that subsequent dissemination of the same allegedly defamatory letter did not restart the limitations period. Accordingly, Virginia's statute of limitations precludes liability for each of the statements Plaintiff attributes to Ms. Roe.

### C.     *The statute of limitations period for Plaintiff's claim cannot be tolled.*

Virginia Code Ann. § 8.01-229 enumerates the bases for tolling a statute of limitations. These include: infancy, incapacity, or death of a party; an injunction order; obstruction or bankruptcy petition; dismissal, abatement, or non-suit of the matter; testator's devise of real property; new contractual promises; creditor's suits; commencement of a third-party complaint; a worker's compensation award; and criminal proceeding. None of these bases apply to Plaintiff's defamation claim against Ms. Roe.

Plaintiff's Complaint does not assert factual allegations to support any of the enumerated statutory bases for tolling the one-year limitations period. Plaintiff purportedly "feared that by pursuing any defamation claim against Ms. Roe" he would face retaliation by the university. Compl. ¶ 254. Fear of retaliation, however, is not a basis for tolling the statute of limitations pursuant to Virginia Code. Ann. § 8.01-229. Moreover, Plaintiff has not pleaded any actions or conduct by the university that caused him to actually fear retaliation. Even so, the defamation claim is against Ms. Roe, not the university. Accordingly, Plaintiff's defamation claim against Ms. Roe is untimely.

## II.     **Even if Plaintiff's defamation claim were timely, he failed to state an actionable claim against Ms. Roe because her statements are absolutely or qualifiedly immune.**

The only defamatory statements Plaintiff claims that Ms. Roe made within one year of filing his Complaint on March 31, 2017 are those included, "upon information and belief," in her submissions to the university in June 2016 and July 2016. Those statements consist of a victim impact statement and a response to Plaintiff's appeal. Because those statements occurred in the context of the university's Title IX investigation, which was a quasi-judicial proceeding, Ms. Roe's statements enjoy absolute immunity. Alternatively, Ms. Roe's alleged statements to the university concerning the sexual assault are entitled to qualified immunity under the common-

732584v.1

interest doctrine. Because Plaintiff's Complaint failed to plead any facts to support his claim that Ms. Roe acted with either constitutional or common-law malice, this Court should dismiss Plaintiff's Complaint against Ms. Roe with prejudice.

**A.** ***Ms. Roe's statements to her university as part of the Title IX investigation enjoy absolute immunity.***

An absolute privilege serves as a complete bar to liability for defamation. No action will lie against an absolutely privileged communication "however false or malicious they may in fact be." *Penick v. Ratcliffe*, 149 Va. 618, 632, 140 S.E. 664, 668 (1927) (citation omitted). It is well-settled that absolute privilege "is not limited to trials…[t]he rule is broad and comprehensive, including within its scope all proceedings of a judicial nature whether pending in some court of justice, or before a tribunal or officer clothed with judicial or quasi-judicial powers." *Penick*, 149 Va. at 627-28, 140 S.E. at 667. Absolute privilege attaches to communications "when relevant to the subject matter of the proceeding." *Katz,* 332 F. Supp. 2d at 918. This rule serves to "ensur[e] free and full disclosure of information and exchange of views by parties to a dispute." *Katz*, 332 F. Supp. 2d 919. Moreover, "[t]he interest that parties not be deterred or chilled by the threat of a defamation suit outweighs an individuals' interest in preserving his reputation untarnished." *Id*.

For example, in *McKay v. Clarke County Sch. Bd.*, 10 Va. Cir. 442 (Va. Cir. Ct. 1988), the circuit court accorded absolute privilege to a principal's alleged defamatory statements in his testimony at a school board hearing concerning a teacher's dismissal. Analyzing the teacher's defamation claim, the court reasoned that the principal's testimony before the board was absolutely privileged because the plaintiff's "own pleading shows that this testimony was given at a quasi-judicial proceeding and there is no claim that his claims were not relevant to the proceeding." *McKay*, 10 Va. Cir. at 445. *See also Childress v. Clement*, 44 Va. Cir. 169 (Va. Cir.

Ct. 1997) (applying absolute privilege to a professor's statements to the school's honor council because the professor had a duty to report violations of the student code).

The question of whether a proceeding is quasi-judicial for purposes of absolute privilege is a legal matter for the court. In *Katz v. Odin, Feldman & Pittleman, P.C.*, this Court stated that a fee arbitration closely resembled a "typical court proceeding" for several reasons. *Katz,* 332 F. Supp. 2d at 920. It is an "alternative to filing a civil lawsuit." *Id.* The results are a "binding, final decision that is enforceable by the circuit court." *Id.* Parties receive "notice of the proceeding, have the opportunity to present evidence, to be represented by counsel, to subpoena documents, information and witnesses[,] and are subject to a binding and enforceable decision." *Id.* Like fee arbitrations, Virginia courts have found other proceedings to be quasi-judicial in nature if they satisfy the "notions of due process, such as requirements for notice, a hearing, and the ability to marshal and present evidence," without emphasizing evidentiary and pleading rules required for court proceedings. *Katz*, 332 F. Supp. 2d at 921. As this Court stated in *Katz*, in embracing statements "in furtherance, and in the course, of judicial proceedings to encourage robust and open discussion throughout the entire process, there is no reason to apply the absolute privilege more narrowly to quasi-judicial proceedings." *Id.*

Here, Plaintiff's Complaint establishes that Marymount's Title IX investigation and proceeding was quasi-judicial in nature. Applying this Court's reasoning in *Katz*, Marymount's Sexual Harassment and Interpersonal Misconduct Policy set forth procedures for receiving a student's complaint of a policy violation. *See* Compl. ¶¶ 26-57. It outlined the university's plan for conducting an initial assessment. *See* Compl. ¶¶ 30-31. The policy provided for how the university would investigate the complaint. *See* Compl. ¶¶ 32-44. The policy also provided a mechanism for its adjudicator to make a decision upon factual findings. *See* Compl. ¶¶ 45, 48-50.

Marymount's investigation and proceeding was also an alternative to filing legal action in a local court. *Katz*, 332 F. Supp. 2d at 920. *See* Compl. ¶¶ 26-27 (the university's sets forth mandatory procedures "to adjudicate allegations of sexual misconduct"). Upon Ms. Roe's report of sexual misconduct, the university's Title IX coordinator gave written notice to Plaintiff on September 8 and 10, 2015. The notice advised Plaintiff that the university was commencing an investigation into a report of his sexual misconduct. *See* Compl. ¶¶ 8, 21, 30, 32, 80, 85-86, 249. Once the investigation commenced, both Plaintiff and Ms. Roe had an opportunity to submit information and identify witnesses who may have relevant information and be heard. *See* Compl. ¶ 35. Investigators interviewed Plaintiff, Ms. Roe, and others. *See* Compl. ¶¶ 89, 97, 103, 106, 108.  The university's policy also allowed Plaintiff and Ms. Roe to review the university's draft report and submit revisions before the report was finalized. *See* Compl. ¶¶ 42, 109, 121, 124, 133.

Also, like the proceeding in *Katz*, the university's investigation resulted in a binding, enforceable, and final decision. *Katz*, at 920. Here, the university's Adjudicator based a final decision upon the investigation team's report and found Plaintiff responsible for sexual misconduct. *See* Compl. ¶¶ 15, 21, 48, 137. The Adjudicator applied a "preponderance of the evidence" standard. Compl. ¶ 48. Moreover, Plaintiff had the opportunity to appeal the Adjudicator's decision. Compl. ¶ 51, 52, 53, 161. On appeal, the university upheld Plaintiff's two-year suspension, which was binding and final. Compl. ¶ 167.

Even though Plaintiff's Complaint against the university criticizes the sufficiency of the university's Title IX proceedings (*see* Compl. ¶¶ 37, 44-47, 80-241), the proceedings remain quasi-judicial for the purposes of evaluating Ms. Roe's statements in the context of Plaintiff's defamation claim under Virginia law. Most notably, federal law requires universities to adopt

18

and implement procedures to investigate and adjudicate student claims of sexual harassment. *See* Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681(a); Office of Civil Rights, U.S. Dep't of Educ., "Dear Colleague Letter," dated Apr. 4, 2011. *See also Butters v. James Madison Univ.*, 208 F. Supp. 3d 745, 757-758 (W.D. Va. 2016) (noting that the "Dear Colleague Letter" obligates schools to abide by Title IX, in particular to "take immediate action to eliminate the harassment, prevent its recurrence, and address its effects"). But Virginia's case law regarding the quasi-judicial nature of the proceedings governs whether statements in such matters enjoy absolute immunity. *See Katz*, 332 F. Supp. 2d at 919.

As students at the university, therefore, Plaintiff and Ms. Roe were subject to Marymount's policies and procedures. Regardless of Plaintiff's assertions that Marymount's procedures were inadequate under Title IX, Plaintiff's Complaint demonstrates that both Plaintiff and Ms. Roe participated in an adjudicatory process, mandated by federal law, in which the university obtained evidence, applied a standard of proof, and made binding factual findings and legal conclusions that affected their rights. Ms. Roe's alleged statements were undeniably relevant to these proceedings. In this context, denying Ms. Roe's statements full protection from exposure to a defamation claim would discourage the "free and full" disclosure necessary for universities to address Title IX claims. *Id.*

Although some cases declined to extend absolute privilege to universities and their officials in the context of Title IX claims, those cases are quite distinguishable. For example, *Wells v. Xavier University*, 7 F. Supp. 3d 746,750 (S.D. Ohio 2014), involved the denial of absolute immunity to a university and its president due to allegations relating to the insufficiency of the proceedings. Notably, the court's decision appeared to presume that such proceedings would be quasi-judicial in nature but for the nature and significance of the deficiencies in the

19

university's procedures. Notably, the Office of Civil Rights was investigating the university for mishandling cases, and a county prosecutor recommended the university drop the case for having no basis. Most importantly, however, the defamation defendant in that case was not the complaining victim. Rather, it was the university and its president who was seeking immunity for statements made in the context of their own allegedly inadequate proceedings.

*Harris v. St. Joseph's University*, No. 13-3937, 2014 U.S. Dist. LEXIS 65452 (E.D. Pa. 2014), illustrates the fact that the issue of immunity depends on state defamation law. In that case, plaintiff sued the university, its officials, and the complaining student-victim. The court denied absolute privilege, not because the university lacked adequate procedural protections, but because Pennsylvania state law on immunities required government involvement before any absolute privilege would apply. No such requirement exists in Virginia defamation law.

Accordingly, Ms. Roe's statements qualify for absolute immunity. There is no question that her alleged statement that Plaintiff sexually assaulted her in the June 2016 victim impact statement or in the July 2016 appellate response were relevant to the proceeding. And there is no question that the Title IX proceedings were quasi-judicial in nature. Because the only statements Plaintiff attributes to Ms. Roe within one year of his Complaint occurred in the context of a Title IX investigation, Ms. Roe's statements enjoy absolute immunity, and this Court should dismiss Plaintiff's Complaint against her with prejudice.

**B.      Even if Ms. Roe's statements were not absolutely privileged, the alleged statements enjoy qualified immunity.**

If this Court determines that Ms. Roe's statements are not absolutely immune, Ms. Roe respectfully submits that her statements were qualifiedly privileged. In this regard, Plaintiff simply alleged that she made her statements with malice, but he did not allege sufficient facts to

support his legal conclusion. Accordingly, Ms. Roe submits that the qualified privilege justifies dismissing Plaintiff's defamation cause of action for failure to state a claim.

The court may afford a qualified privilege to defamatory statements, even if absolute immunity is not available. *Katz*, 332 F. Supp. 2d at 921 n.13. This privilege applies to communications "between persons on a subject in which they have an interest or duty." *Larimore v. Blaylock*, 259 Va. 568, 572, 528 S.E.2d 119, 121 (2000).

In Virginia, actual malice is required to defeat the qualified privilege based on common interest. Actual malice is defined as behavior motivated by "some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff," or "such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of the plaintiff." *Southeastern Tidewater Opportunity Project, Inc. v. Bade*, 246 Va. 273, 276, 435 S.E.2d 131, 132 (1993) (internal citations omitted).

The plaintiff must plead more than "repeated assertions that [a] defendant charged with defamation acted 'with malice' and with a 'motive of personal spite and revenge' are not, by themselves, sufficient to state a claim of malice sufficient to overcome qualified privilege." *Echtenkamp v. Loudoun County Pub. Schs*, 263 F. Supp. 2d 1043, 1062 (E.D. Va. 2003) (citing to *Young v. City of Mount Rainier*, 238 F.3d 567, 577 (4th Cir. 2001) (holding that actual malice was not sufficiently pled simply by "throwing in words and phrases such as 'deliberate indifference,' 'malicious,' 'outrageous,' and 'wanton' when describing the conduct")).

In this regard, Ms. Roe's statements to the Adjudicator and Appellate Authority deserve qualified immunity. She gave her victim impact statement and appellate response during the University's Title IX proceeding. In fact, the university's Adjudicator asked Ms. Roe to provide the impact statement. Accordingly, university officials had an interest in investigating and

21

adjudicating allegations of sexual misconduct in violation of its policies. Compl. ¶¶ 27-58. Also, the university had a duty pursuant to the U.S. Department of Education's Dear Colleague Letter (April 4, 2011) to investigate and respond to the alleged Title IX violation. Compl. ¶ 58. Therefore, any alleged defamatory statements in Ms. Roe's victim impact statement and appeal response were subject to a qualified common-interest privilege.

Plaintiff failed to plead any facts, however, to support the claim that Ms. Roe made her statements with actual malice to defeat qualified privilege. Rather, he simply states, "Ms. Roe made her defamatory statements with actual malice and reckless disregard of their falsity, or with knowledge of their falsity." Compl. ¶ 265. Yet, the Complaint states no basis to suggest that Ms. Roe had any motive to fabricate her claim of sexual assault. There was no indication of animosity between Ms. Roe and Plaintiff before the incident, and the Complaint demonstrates that it was Ms. Roe who terminated contact after the incident. Compl. ¶¶ 59-62, 71-74. And, far from showing a reckless disregard for the truth, Plaintiff's Complaint acknowledges that he apologized to Ms. Roe when she told him that she was not responding to his texts because he "wouldn't take no for an answer." Compl. ¶ 73.

Accordingly, Defendant Roe respectfully submits that her alleged statements enjoy qualified immunity, at least, and that Plaintiff failed to plead facts sufficient to establish actual malice. As a result, Ms. Roe submits that Plaintiff's defamation claim against her should be dismissed with prejudice.

## Conclusion

For the foregoing reasons, Defendant Jane Roe respectfully requests that the Court grant her motion to dismiss Plaintiff's defamation *per se* claim with prejudice.

732584v.1

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

 _/s/ Jason R. Waters_
Jason R. Waters (VSB No. 73887)
Catherine J. Malycke (VSB No. 84952)
8444 Westpark Drive, Suite 510
McLean, Virginia 22102-5102
Tel.: (703) 245-9300
Fax: (703) 245-9301
Jason.Waters@wilsonelser.com
Catherine.Malycke@wilsonelser.com
_Counsel for Defendant Jane Roe_

23

**Certificate of Service**

I HEREBY CERTIFY that a copy of the foregoing was served via Electronic Case Filing

(ECF) this 5th day of July, 2017 to:

Justin Dillon, Esq.
KaiserDillon PLLC
1401 K Street NW, Suite 600
Washington, DC 20005
(202) 640-2850 (telephone)
jdillon@kaiserdillon.com
*Counsel for Plaintiff*

Jason A. Ross, Esq.
Saul Ewing LLP
1919 Pennsylvania Ave., Suite 550
Washington, DC 20006-3434
(202) 333-8800 (telephone)
jross@saul.com
*Counsel for Defendants Marymount University*
*and Linda McMurdock*

Joshua W. B. Richards, Esq.
*(Admitted pro hac vice)*
jrichards@saul.com
Saul Ewing LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Tel: (215) 972-7777
Fax: (215) 972- 1831
*Counsel for Defendants Marymount University*
*and Linda McMurdock*

William D. Nussbaum, Esq.
*(Admitted pro hac vice)*
wnussbaum@saul.com
Saul Ewing LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006-3434
Tel: (202) 295-6652
Fax: (202) 295-6715
*Counsel for Defendants Marymount University*
*and Linda McMurdock*

732584v.1

_/s/ Jason R. Waters_

Jason Waters, VSB #73887
Catherine J. Malycke VSB #84952
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
8444 Westpark Drive, Suite 510
McLean, VA 22102-5102
jason.waters@wilsonelser.com
catherine.malycke@wilsonelser.com
(703) 245-9300 (telephone)
(703) 245-9301 (facsimile)
_Counsel for Defendant Jane Roe_

25